UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

UNITED STATES OF AMERICA,            :
                                     :        01-CR-1110 (LAP)
        -v.-                         :
                                     :        MEMORANDUM
                                     :        & ORDER
MANUEL ROMAN,             :
                                     :
              Defendant.    :
------------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

        Before the Court is Defendant Manuel Roman's motion for a
sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i),
(Initial Motion ("Initial Mot."), dated Dec. 12, 2022 [dkt. no.
168]), and his motion pursuant to Amendment 821 of the Sentencing
Guidelines, (Amendment 821 Motion ("Am. 821 Mot."), dated Feb. 7,
2024 [dkt. no. 185]).   For the reasons set forth below, both
motions are denied.

I.    **Offense Conduct and Sentencing**

        In the 1990s, Defendant was the primary leader of the "Hoe
Avenue Crew," a Bronx-based drug trafficking organization, with
his mother—and his co-Defendant in this action, Rosalie Garcia—
serving as his trusted advisor.   (Presentence Investigation Report
("PSR") ¶¶ 29-31, dated Mar. 7, 2024 [dkt. no. 191].)    Under
Defendant's direction, the Hoe Avenue Crew sold an average of 100
bundles of heroin per day, seven days a week, within the Southern
District of New York community, for a total of approximately

1

$70,000 in profit per week. (Id. ¶ 36.) As the leader of the Hoe Avenue Crew, Defendant oversaw the organization's drug dealers, facilitated purchases with wholesale heroin dealers, and made decisions about when and how his organization would retaliate against rival drug dealers that infringed on his organization's turf. (Id. ¶¶ 32-38.) At least twice in the 1990s, Defendant's organization engaged in full-scale drug wars with other drug organizations. (Id. ¶ 34.) In the midst of these drug wars, Defendant armed his workers with guns and bullet-proof vests and, in 1993, 1994, and 1997, Defendant hired others to kill at least four other individuals. (Id. ¶¶ 39-45.)

On November 29, 2001, Defendant was indicted in this Court, and on September 27, 2005, the Government filed a superseding indictment charging Defendant with the following twelve counts: (i) one count of racketeering, in violation of 18 U.S.C. § 1962(c) (Count 1); (ii) one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 2); conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 3); (iii) murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 1959(a)(2) (Count 4); (iv) four counts of murder while engaged in a narcotics offense, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2 (Counts 5-8); (v) using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 9); (vi) using a firearm during and

in relation to a crime of violence and thereby causing the death of a person, in violation of 18 U.S.C. §§ 924(j) and 2 (Count 10); (vii) conspiracy to distribute one kilogram and more of heroin and cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846 (Count 11); and using and carrying a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 12).  (See PSR at 6-7.)

On December 6, 2005, following a jury trial, Defendant was found guilty on all counts of the Superseding Indictment.  (Id. ¶ 23.)  On July 6, 2006, the Honorable Gerard E. Lynch sentenced Defendant to life imprisonment on Counts 1-2, 4-8, and 10-11, 120 months' imprisonment on Count 3, to run concurrently with Counts 1-2, 4-8, and 10-11, and 300 months' imprisonment on Count 12. (See dkt. no. 104 (Judgment).)

Defendant is currently serving his sentence at USP Canaan. Because of his sentences to multiple life terms of imprisonment, Defendant does not have a projected release date.

## II.  **The Motion**

On December 12, 2022, Defendant filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A).  (Initial Mot.)  On December 16, 2022, Defendant filed attachments to the Initial Motion. (Initial Motion Attachments ("Initial Mot. Attachs."), dated Dec. 16, 2022 [dkt. no. 171].)  On July 31, 2023, Defendant filed a letter supplement to the Initial Motion.

(Initial Motion Supplement ("Initial Mot. Suppl."), dated July 31, 2023 [dkt. no. 178].)

In the Initial Motion, Defendant argues that the Court should grant his compassionate release because of his age, his "declining health," and "COVID-19." (Initial Mot. at 1.) Defendant also argues that other factors represent "extraordinary and compelling reasons" to reduce his sentence, including his "rehabilitation and redemption" and the fact that he has "[v]irtually [n]o [d]isciplinary violations over the course of his more than 21-years behind bars." (See Initial Mot. at 1-5; see also Initial Mot. Attachs. at 2-8; Initial Mot. Suppl. at 3-7.)

## III. **Applicable Law**

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed except that"

> [T]he court, upon motion of the Director of the Bureau of Prisons [(the "BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." United States v. Corbett, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023) (citing United States v. Phillibert, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021)). But in 2018, Congress enacted the First Step Act and "authorized courts to reduce a term of imprisonment upon motion by a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

The Sentencing Commission is responsible for "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Accordingly, even before the First Step Act was enacted, the Sentencing Commission promulgated a policy statement—Section 1B1.13 of the Guidelines—concerning sentence reductions under Section 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction. U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n, annotated 2023).

In September 2020, the Court of Appeals held that this policy statement "applied only to a 'motion of the Director of the Bureau of Prisons,' see U.S.S.G. § 1B1.13 (historical note), and not 'to

compassionate release motions brought by defendants[.]'" <u>Corbett</u>,
2023 WL 8073638, at *3 (quoting <u>United States v. Brooker</u>, 976 F.3d
228, 236 (2d Cir. 2020)).  As a result, the Court of Appeals
explained that the policy statement did not "constrain district
courts' discretion to consider whether any reasons are
extraordinary and compelling." <u>Brooker</u>, 976 F.3d at 236.  Even
though Section 1B1.13 did not govern compassionate release motions
filed by a defendant, district courts were nevertheless able to
"look[] to § 1B1.13 for guidance in the exercise of [their]
discretion" when considering such a motion.  <u>United States v.
Rodriguez</u>, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y.
Dec. 23, 2020).

     However, "[e]ffective November 1, 2023, . . . the Sentencing
Commission amended the Guidelines to also cover defendant-
initiated petitions." <u>Corbett</u>, 2023 WL 8073638, at *3 (citing
U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88
Fed. Reg. 28,254 (effective Nov. 1, 2023)).  "The amended guidance
from the Commission as to what constitutes extraordinary and
compelling reasons now controls the analysis of a compassionate
release petition, however initiated." <u>Id.</u>  Section 1B1.13 of the
Guidelines, as amended, explains what circumstances, "singly or in
combination," constitute extraordinary and compelling reasons for
release.  <u>Id.</u>  These include, at a high level, certain medical
circumstances of the defendant, the age of the defendant, certain

family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long. See U.S.S.G. § 1B1.13(b); United States v. Mendez-Rojas, No. 11 Cr. 929 (PAE), 2024 WL 4345561, at *3 (S.D.N.Y. Sept. 30, 2024).

In short, when a court considers a motion for compassionate release filed by a defendant, the court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his administrative remedies, (ii) there are extraordinary and compelling reasons for a reduction of the sentence, (iii) the Section 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy statements. See 18 U.S.C. § 3582(c)(1)(A)(i). The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under Section 3582. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction." (citing Butler, 970 F.2d at 1026)); United States v. Givens, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

Additionally, if the Court "concludes that the applicable section 3553(a) factors do not support a sentence reduction, it need not determine whether the defendant has shown extraordinary and compelling reasons." United States v. Giattino, No. 23-6918-cr, 2024 WL 4579342, at *2 (2d Cir. Oct. 25, 2024) (summary order) (citing United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam)); see also United States v. Ramirez, 571 F. Supp. 3d 40, 45 (S.D.N.Y. 2021) ("A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

## IV.  **Discussion**

### a. **Defendant Has Exhausted His Administrative Remedies as to Any Arguments in the Motion**

The Government argues that BOP has stated that it "has no record of [D]efendant['s] requesting compassionate release relating to the issues raised in the Motion . . . ," (dkt. no. 187 at 4), but offers no detail about whether there is any record of a compassionate release request or about what issues were or were not raised.

In Defendant's reply, (dkt. no. 208), however, he states that he submitted a request to the Warden for compassionate release and a sentence reduction on July 1, 2021, that the request was denied on September 8, and that the Warden "advised Mr. Roman to 'address

this matter with the Court for the Southern District of New York.'" (<u>Id.</u> at 3.)   On that basis, the Court finds that Defendant exhausted his administrative remedies.

Even crediting the Government's position that Defendant did not exhaust his administrative remedies as to all the issues raised in his motion, the Court notes that courts in this district have not been of one mind as to whether Section 3582(c)(1)(A) requires a defendant to exhaust administrative remedies with respect to each issue raised in a motion for compassionate release.   <u>E.g.</u>, <u>United States v. Gunn</u>, No. 06 Cr. 911, 2022 WL 2077971, at *3 (S.D.N.Y. June 9, 2022).   Nevertheless, the Court adopts Judge Sidney H. Stein's well-reasoned analysis in <u>United States v. Torres</u>, 464 F. Supp. 3d 651, 655-56 (S.D.N.Y. 2020), holding the contrary – that issue exhaustion is not required.   Accordingly, the Court finds that Defendant has exhausted his administrative remedies.

### b. Defendant Has Not Established Extraordinary and Compelling Reasons

In his Initial Motion, Defendant argues that his age, "declining health," and "COVID-19" constitute extraordinary and compelling reasons for granting the Motion.   (Initial Mot. at 1.) Defendant also argues that other factors represent "extraordinary and compelling reasons" to reduce his sentence, including his "rehabilitation and redemption" and the fact that he has

9

"[v]irtually [n]o [d]isciplinary violations over the course of his more than 21-years behind bars."  (See Initial Mot. at 1-5; see also Initial Mot. Attachs. at 2-8; Initial Mot. Suppl. at 3-7.) None of these arguments warrant the relief Defendant seeks, as discussed below.

> 1. **Defendant's Age, Health Condition, and Fear of COVID-19 are Not Extraordinary and Compelling Reasons for a Sentence Reduction**

Defendant argues that COVID-19, paired with his age and health conditions, place "him at high risk," (see Initial Mot. at 7-13.), and therefore warrant the granting of his Motion.  However, recent amendments to Section 1B1.13 of the Sentencing Guidelines support a contrary conclusion.  The recent amendments provide that "an ongoing outbreak of infectious disease" can sometimes constitute extraordinary and compelling reasons for a sentence reduction, but only where (i) the defendant's facility is "affected or at imminent risk of being affected" by the "ongoing outbreak;" (ii) "due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease;" and (iii) "such risk cannot be adequately mitigated in a timely manner."  U.S.S.G. § 1B1.13(b)(1)(D).[1]

_____

[1] Instead of an "ongoing outbreak," a defendant may cite "an ongoing public health emergency declared by the appropriate federal, state, or local authority," id., but the COVID-19 public health emergency ended on May 11, 2023, (cont'd)

First, Defendant failed to demonstrate that his facility is "affected or at imminent risk of being affected" by an "ongoing outbreak."  See U.S.S.G. § 1B1.13(b)(1)(D)(i).  To the contrary, Defendant's facility, USP Canaan, has one open case of COVID-19 among the institution's 1,472 inmates.  See Inmate COVID-19 Data, Federal Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited Apr. 9, 2025).

Second, even if there were an outbreak at USP Canaan, Defendant would still need to demonstrate that the risks he faces in connection with that outbreak "cannot be adequately mitigated in a timely manner."  U.S.S.G. § 1B1.13(b)(1)(D)(iii).  With widespread vaccination and other risk-reduction measures, however, COVID-19 risks can now be adequately and timely mitigated. According to the CDC, "[t]he COVID-19 vaccine helps protect [people] from severe illness, hospitalization, and death." Benefits of Getting Vaccinated, U.S. Centers for Disease Control and Prevention, https://www.cdc.gov/covid/vaccines/benefits.html (updated Jan. 13, 2025) (last visited Apr. 9, 2025).  Defendant's

_____

(cont'd) see CDC, End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=May%2011%2C%202023%2C%20marks%20the,federal%20COVID%2D19%20PHE%20declaration (updated Sept. 12, 2023) (last visited Apr. 9, 2025).  Defendant identifies no other pertinent public health emergency.

recent medical records indicate that he only tested positive for COVID-19 one time—four years ago in or around February 2021—and despite Defendant's age and health conditions, he apparently recovered without incident, as demonstrated by his failure to mention any COVID-19 diagnosis, let alone any resultant health issues deriving from the virus.  (See, e.g., Ex. B at 27).[2]  In addition, Defendant is relatively young (53-years-old), lessening the risks even further.  See, e.g., United States v. Batista, No. 19 Cr. 2, 2020 WL 3249233, at *3 (S.D.N.Y. June 16, 2020) ("According to the [CDC], adults aged 65 years or older . . . may be at higher risk for a severe illness from COVID-19.").

Third, Defendant failed to demonstrate that "due to personal health risk factors and custodial status, Defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease . . ." See U.S.S.G. § 1B1.13(b)(1)(D)(ii).  Defendant claims that "he suffers from medical conditions that make him uniquely susceptible to serious illness or death if infected by COVID-19," yet he offered not a single adverse medical health condition, let alone any specific details on those medical conditions or how they create an "heightened risk" to the defendant."  (Initial Mot. at 12.)

---

[2] Exhibit B (medical records) are filed under seal, given the sensitive medical information contained therein.  (Dkt. no. 196.)

Without more, Defendant's conclusory statements cannot satisfy the requisite standard for obtaining the relief he seeks.

For each of the foregoing reasons, Defendant has failed to meet his burden of showing that the COVID-19 virus, his age, and/or any unidentified health conditions qualify as extraordinary or compelling reasons justifying his release.  See, e.g., United States v. Castelle, No. 18 Cr. 15 (AKH), 2022 WL 4536798, at *2 (S.D.N.Y. Sept. 28, 2022) (finding that the defendant "fails to satisfy his burden of proof of showing 'extraordinary and compelling reasons'" when he "offers no medical records or any other evidence to support his claim").

## 2. Defendant's Evidence of Rehabilitation is Not an Extraordinary and Compelling Reason for a Sentence Reduction

Defendant also argues that he has been rehabilitated and has low scores on various measures designed to predict recidivism, violence, and the like.  (See Initial Mot. at 6-7; Initial Mot. Suppl. at 1-2.)  However, Defendant fails to specify whether he believes his rehabilitation offers an extraordinary and compelling reason for a sentence reduction or merely a relevant factor that the Court may consider if it conducts a Section 3553(a) analysis. To the extent he contends this is an extraordinary and compelling reason, however, the Guidelines clarify that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. §

13

1B1.13(d). The Court may consider "rehabilitation of the defendant while serving the sentence" only "in combination with other circumstances." Id. To be sure, the fact that Defendant has participated in education courses, (see Ex. C at 2-3.), are positive developments.[3] However, contrary to Defendant's statement that he has had "[v]irtually [n]o [d]isciplinary [h]istory violations," see Initial Mot. at 4, Defendant's record shows that his penchant for violence—as reflected in the serious offenses for which he was convicted in this case—has continued as recently as in May 2019, when he received multiple disciplinary infractions for sexual assault within his BOP facility.[4] (See Ex. D at 1.) In any event, any rehabilitation exhibited through Defendant's educational and vocational pursuits in prison constitutes an insufficient basis for granting the extraordinary relief of a reduced sentence. See, e.g., United States v. Saleh, No. 93 Cr. 181 (WHP), 2020 WL 3839626, at *4 (S.D.N.Y. July 8, 2020) (denying relief while observing that "every inmate should strive for a productive institutional record while incarcerated because that is what is expected"); United States v. Lisi, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24, 2020)

---

[3] Exhibit C (BOP education records, inmate profile, and individualized needs plan) is filed under seal, given the personal information contained therein. (Dkt. no. 196.)
[4] Exhibit D (BOP disciplinary records) is filed under seal, given the personal information contained therein. (Dkt. no. 196.)

(finding that "rehabilitation of the defendant" did not constitute "an extraordinary and compelling reason . . . ") (internal quotations omitted).

### c. The Section 3553(a) Factors Weigh Against a Sentence Reduction

Even if Defendant had shown an extraordinary and compelling reason for reducing his sentence, such a reduction would be inconsistent with the Section 3553(a) factors. Each of the offenses that Defendant was convicted of—including five counts of murder, one count of racketeering, one count of racketeering conspiracy, one count of conspiracy to commit murder, one count of use of a firearm in furtherance of a crime of violence, one count of using a firearm during and in relation to a crime of violence and thereby causing the death of a person, one count of conspiracy to distribute one kilogram and more of heroin and cocaine, and one count of using and carrying a firearm in furtherance of a drug trafficking crime—is exceptionally serious. But taken together, the totality of those offenses is grave and constitute the worst offenses that can be inflicted on the Southern District of New York community: the taking of lives, the fueling of addiction to dangerous controlled substances, and the intentional and organized planning and execution of those harms. Based on this factor alone, release is not warranted, even considering Defendant's arguments.

V.    **Motion Pursuant to Amendment 821**

While the Motion does not explicitly state the specific grounds upon which Defendant seeks a sentence reduction, the parties have construed the Motion as seeking a sentence reduction through the retroactive application of United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") Amendment 821, which took effect on November 1, 2023.  The parties also construe the Motion as resting on the following portion of Amendment 821: Part B, Subpart 1, which creates a new provision, Section 4C1.1, which provides a two-level downward adjustment in offense level for certain offenders who present zero criminal history points and are not subject to any of the ten exclusionary criteria listed in the new U.S.S.G. § 4C1.1.

A defendant is generally eligible for potential relief if, as a result of Amendment 821, the defendant's amended Guidelines range is lower than the range that applied at the defendant's original sentencing and if the defendant did not already receive a sentence lower than the amended range on any ground other than substantial assistance.

Section 3582(c)(2), which governs Defendant's Motion, "establishes a two-step inquiry.  A court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." Dillon

16

<u>v. United States</u>, 560 U.S. 817, 826 (2010). Under application note 1(A) to Section 1B1.10: "Eligibility for consideration under 18 U.S.C. § 3582(c)(2) is triggered only by an amendment listed in subsection (d) that lowers the applicable guideline range (<u>i.e.</u>, the guideline range that corresponds to the offense level and criminal history category determined pursuant to §1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance)."

Defendant does not qualify for relief under Amendment 821, as the U.S. Probation Office states in the Supplemental Presentence Investigation Report. (<u>See</u> PSR at 3-4.) In particular, pursuant to U.S.S.G. § 4C1.1, a defendant is only eligible for a sentencing reduction if, among other criteria, (i) the defendant "did not use violence or credible threats of violence in connection with the offense," (ii) the "offense did not result in death or serious bodily injury," (iii) the defendant "did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense," and (iv) "the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848."

Here, Defendant has not satisfied those four criteria given the nature and circumstances of the offenses he committed.

In the 1990s, Defendant was the primary leader of the "Hoe Avenue Crew," a Bronx-based drug trafficking organization, with his mother—and his co-defendant in this action, Rosalie Garcia— serving as his trusted advisor. (PSR ¶¶ 29-31.) Under Defendant's direction, the Hoe Avenue Crew sold an average of 100 bundles of heroin per day, seven days a week, within the Bronx, for a total of approximately $70,000 in profit per day. (Id. ¶ 36.) As the leader of the Hoe Avenue Crew, Defendant oversaw the organization's drug dealers, facilitated purchases with wholesale heroin dealers, and made decisions about when and how his organization would retaliate against rival drug dealers that infringed on his organization's turf. (Id. ¶¶ 32-38.) At least twice in the 1990s, Defendant's organization engaged in full-scale drug wars with other drug organizations. (Id. ¶ 34.) In the midst of these drug wars, Defendant armed his workers with guns and bullet-proof vests and, in 1993, 1994, and 1997, Defendant hired others to kill at least four other individuals. (Id. ¶¶ 39-45.)

On November 29, 2001, Defendant was indicted, and on September 27, 2005, the Government filed a superseding indictment charging Defendant with the following twelve counts: (i) one count of racketeering, in violation of 18 U.S.C. § 1962(c) (Count 1); (ii) one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 2); conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count 3);

(iii) murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 1959(a)(2) (Count 4); (iv) four counts of murder while engaged in a narcotics offense, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2 (Counts 5-8); (v) using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 9); (vi) using a firearm during and in relation to a crime of violence and thereby causing the death of a person, in violation of 18 U.S.C. §§ 924(j) and 2 (Count 10); (vii) conspiracy to distribute one kilogram and more of heroin and cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846 (Count 11); and using and carrying a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 12). (See PSR at 6-7.)

On December 6, 2005, following a jury trial, Defendant was found guilty on all counts of the Superseding Indictment. (Id. ¶ 23.) In the PSR, the U.S. Probation Office calculated Defendant's total offense level at 51—including a four-level adjustment under U.S.S.G § 3B1.1 because Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive—and a Criminal History Category of I. (Id. ¶¶ 60-112.)

On July 6, 2006, the Honorable Gerard E. Lynch sentenced Defendant to life imprisonment on Counts 1-2, 4-8, and 10-11, 120 months' imprisonment on Count 3, to run concurrently with Counts

1-2, 4-8, and 10-11, and 300 months' imprisonment on Count 12. (See Judgment.)

   As described above and in Defendant's PSR, the evidence at trial showed that (i) Defendant used violence or credible threats of violence in connection with the offenses he committed; (ii) the offenses at issue resulted in death or serious bodily injury— namely, the death of at least four individuals; (iii) Defendant possessed, received, and used firearms in connection with the offenses; and (iv) Defendant received an upward adjustment for being the leader of his drug trafficking organization. (PSR at 3 (indicating that Defendant is "precluded from the zero-point offender offense level reduction pursuant to U.S.S.G. § 4C1.1," namely because of his failure to meet the four criteria discussed above).)  In light of the evidence adduced at trial and the offenses of which Defendant was convicted, Defendant is not eligible for a sentence reduction under Amendment 821.

   Defendant's counsel does not disagree that he is ineligible for a sentence reduction under the statute.

**VI.  Conclusion**

   For the reasons set forth above, Defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (dkt. no. 168), is denied, and his motion pursuant to Amendment 821 of the Sentencing Guidelines, (dkt. no. 185), is denied.

As the motion makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253.  The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 445 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court shall close dkt. nos. 168 and 185 and mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:     New York, New York
           April 14, 2025

_____
LORETTA A. PRESKA
Senior United States District Judge