UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v.-

RICARDO SILVA and
MANUEL ROMAN,

Defendants.

01-CR-1110 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are two pro se motions filed by Defendants Ricardo Silva and Manuel Roman for reconsideration of the Court's orders denying their motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[1] For the reasons set forth below, the motions are DENIED.

**LEGAL STANDARD**

In this District, motions for reconsideration may be made pursuant to Rule 59(e), which "gives a district court the chance to rectify its own mistakes in the period immediately following its decision." Banister v. Davis, 590 U.S. 504, 508 (2020) (internal quotation marks omitted). The standard for

[1] See Silva Motion for Reconsideration, Dkt. 230 ("Silva Mot."); Government's Letter in Opposition, Dkt. 236 ("Gov. Silva Opp."); Silva's January 12, 2026 Letter, Dkt. 240 ("Silva Status Ltr."); Roman Motion for Reconsideration, Dkt. 232 ("Roman Mot."); June 18, 2025 Letter, Dkt. 234 ("Roman Ltr."); Government's Letter in Opposition, Dkt. 235 ("Gov. Roman Opp."); September 2025 Supplemental Submission, Dkt. 238 ("Roman Suppl."). Mindful of Defendants' pro se status, the Court has construed their submissions liberally and considered each on its merits. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

reconsideration is demanding, however, and such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Notwithstanding the high bar for reconsideration, pro se arguments are read "to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted).

On the underlying motions for compassionate release, a defendant must show that: (i) he has exhausted his administrative remedies; (ii) extraordinary and compelling reasons warrant a reduction; (iii) the Section 3553(a) factors favor a reduction, and; (iv) a reduction is consistent with the Sentencing Commission's policy statements. See 18 U.S.C. § 3582(c)(1)(A). Rehabilitation "is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13(d). Where the Section 3553(a) factors do not support a reduction, the Court need not decide whether extraordinary and compelling reasons exist. United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam).

Although the Court has broad discretion to weigh the Section 3553(a) factors, the Court's ability to grant compassionate release is not without bounds. In particular, "[t]he compassionate release provision is not a vehicle for attacking the validity of

a conviction," Fernandez v. United States, 608 U.S. 411, 430 (2026), and any sentencing disparity that results from a non-retroactive statutory amendment cannot qualify as an "extraordinary and compelling" reason, Rutherford v. United States, 608 U.S. 454, 473 (2026).

## **DISCUSSION**

### A. Silva's Motions

Silva served as the Hoe Avenue Crew's enforcer and, at least twice, accepted money to kill rival drug dealers. (Dkt. 219 at 1-2.) On November 13, 1993, Silva shot Victor Rivera once in the back of the head at point-blank range. Silva and others later opened fire on three members of a rival crew, killing two, and were in turn paid $5,000 each for the murders. (Id. at 2-3.) Following a jury trial in 2005, Silva was convicted on Counts One, Two, Five, Six, Seven, Eleven, and Twelve. Judge Lynch sentenced Silva to concurrent terms of life imprisonment on all but Count Twelve, followed by a consecutive 60-month term. (Id. at 3-5.)

On December 18, 2024, the Court denied Silva's motion for compassionate release (the "December 2024 Order," Dkt. 219). The Court rejected each of Silva's proffered reasons, including his argument that the First Step Act would no longer mandate a life sentence on Count Eleven, and found that his disciplinary record, which includes heroin possession in 2022, undermined any claim of rehabilitation. (Id. at 9-16.) The Court further held that the

Section 3553(a) factors "counsel heavily against compassionate release," explaining that "[k]illing multiple people in cold blood as part of a drug war is about as serious an offense as is possible to commit." (Id. at 16, 18.)

Silva now seeks reconsideration of the December 2024 Order. (Silva Mot. at 1, 3.) Silva argues that (i) the Court's April 3, 2025 grant of compassionate release to his co-defendant Rosalie Garcia, together with national sentencing statistics and decisions from other districts reducing life sentences, establishes an unwarranted disparity under 18 U.S.C. § 3553(a)(6); (ii) the drug quantity underlying his convictions would today support only a conviction under 21 U.S.C. § 841(b)(1)(C), such that Counts Five through Seven should be dismissed and his remaining sentences capped at twenty years; and (iii) the First Step Act reduced the mandatory minimum on Count Eleven to twenty-five years. (Id. at 1-3.) Accordingly, Silva asks for a sentence of thirty or thirty-five years. (Id. at 2-3.) The Government opposes. (Gov. Silva Opp. at 1.)

Putting aside the motion's untimeliness, the motion also fails on the merits. First, Garcia's release is not "new evidence" that bears on Silva's motion. The Court granted Garcia's motion solely because she is the only available caregiver for an incapacitated adult son. (Dkt. 227 at 12-14.) Those circumstances do not bear on Silva's motion.

Second, Silva's remaining disparity materials are neither new nor controlling. The national sentencing statistics on which he relies date from 2023, and the decisions he cites come from courts in other districts and circuits. (Silva Mot. at 2–3.) None is a controlling decision the Court overlooked.

Third, Silva's drug-quantity argument attacks the validity of his convictions on Counts Five through Seven and the sentences on the remaining counts. (Silva Mot. at 1). A compassionate release motion, however, is not a vehicle to advance those arguments. See Fernandez, 608 U.S. at 430. Nor does Silva identify any intervening change in law that helps him. On the contrary, the new Supreme Court precedent only confirms that the Court's prior order was correct.

Finally, even if Silva had identified a ground for reconsideration, the Court's Section 3553(a) analysis would independently foreclose relief. Nothing in the motion bears on the seriousness of Silva's offenses or on the disciplinary record from which the Court found that Silva has not, at present, been rehabilitated. (Dkt. 219 at 16–18.)

Accordingly, Silva's motion for reconsideration is DENIED, although Silva remains free to file a new motion based on materially changed circumstances.

**B. Roman's Motions**

In the 1990s, Roman led the Hoe Avenue Crew, a Bronx heroin organization. In the course of various drug wars, Roman armed his workers and hired others to kill at least four people. (Dkt. 229 at 1-2.) A jury convicted Roman on all twelve counts of the superseding indictment, and Judge Lynch sentenced Roman to life imprisonment. (Id. at 3.)

On April 14, 2025, the Court denied Roman's motions for compassionate release and for a reduction under Amendment 821 (the "April 2025 Order," Dkt. 229 at 20). The Court held that Roman's age, health, and COVID-19 concerns were not extraordinary and compelling reasons warranting release. Moreover, the Court found that Roman's rehabilitation was insufficient by itself and that the seriousness of Roman's offenses alone independently foreclosed relief under Section 3553(a). (Id. at 9-15.) The Court also held that Roman was ineligible for the zero-point-offender adjustment under U.S.S.G. § 4C1.1 because Roman's offenses resulted in death and thus yielded an aggravating-role adjustment. (Id. at 16-20.) As to rehabilitation, the Court expressed particular concern that Roman had received "multiple disciplinary infractions for sexual assault" in May 2019. (Id. at 14.)

Roman's motion, which the Government opposes, contends that the 2019 incident was charged as an assault (BOP code 224), rather than a sexual assault (code 229).

Roman's motion is untimely and also fails on the merits. Certainly, the Court takes Roman's point that the BOP records are internally inconsistent as to how the March 2019 incident was coded, and the BOP may well be advised to correct its records accordingly to the extent they are relevant in future motions filed by Roman. The problem for Roman is that those BOP labels were far from dispositive to the Court's operative decision denying relief. The disciplinary record appeared only in the Court's rejection of rehabilitation as an extraordinary and compelling reason, and the Court held in the same paragraph that Roman's rehabilitation was insufficient regardless. (Dkt. 229 at 14.)

Moreover, the Court's decision relied independently on the gravity of Roman's offenses, which the Court found dispositive by itself. (Dkt. 229 at 15.) In other words, the Court's denial turned chiefly on Roman's offense conduct, not on anything that occurred in prison. Correcting the BOP code thus could not "reasonably be expected to alter the conclusion reached by the court." Shrader, 70 F.3d at 257. Indeed, the incident report Roman himself submitted reflects his cellmate's account that Roman forced him from his bunk, searched him, and pulled down his shorts while holding an object the cellmate believed to be a weapon. (Roman Suppl. at 14.) However such conduct is coded, it is certainly not the conduct of a rehabilitated inmate.

Naturally, nothing in this Order precludes Roman from pursuing correction of his BOP records administratively, and the Court expresses no view on which code is accurate. Accordingly, Roman's motion for reconsideration is DENIED. His request for appointment of counsel (Roman Ltr. at 1) is also DENIED for the reasons set forth in the Court's October 8, 2025 Order. (Dkt. 239.)

## CONCLUSION

For the foregoing reasons, Silva's motion for reconsideration (Dkt. 230) and Roman's motion for reconsideration (Dkt. 232) are DENIED. To the extent Roman has sought counsel, Roman's request for appointment of counsel (Dkt. 234) is also DENIED.

Because neither motion makes a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2). The Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and in forma pauperis status is therefore denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438 (1962).

The Clerk of Court shall close Dkt. 230 and mail a copy of this Order and the docket sheet to both Roman and Silva.

**SO ORDERED.**

Dated: New York, New York
November 11, 2026

Loretta A. Preska

LORETTA A. PRESKA
Senior United States District Judge